UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                               PLAINTIFF

v.                           Case Nos. 2:19-CR-20024

STEPHEN MARK COX; and
SCOTT SAMUEL GREEN                                                    DEFENDANTS

**OPINION AND ORDER**

Defendant Stephen Mark Cox filed a motion (Doc. 36) to suppress and brief (Doc. 37) in support of his motion. Defendant Scott Samuel Green filed a separate motion (Doc. 38) to suppress and brief (Doc. 39). The Government filed one response (Doc. 47) addressing both motions. At the Court's request, the Government also filed a copy of the dash cam video footage as a supplement (Doc. 48) to its motion. After reviewing the motions, briefs, and dash cam video footage, the motions to suppress will be DENIED.

**I.      Background**

On April 17, 2019, Defendants Stephen Mark Cox and Scott Samuel Green were traveling in a white SUV heading east on Interstate 40 in Arkansas. Green was driving and Cox was in the passenger seat. At approximately 1:25 p.m., Arkansas State Trooper Christopher Short initiated a traffic stop of Defendants' SUV because Trooper Short believed the defendants were following a black pickup too closely. Dash cam footage from Trooper Short's patrol car documents approximately two-minutes preceding the traffic stop.[1]

The video shows that before he was pulled over, Green was driving in the right lane behind

---

[1] Trooper Short's car was equipped with a dash cam and a lapel microphone. The camera saves video from approximately 60 seconds before an officer engages the blue lights. (Doc. 47, p. 2, n.1)

1

a black pickup truck. Trooper Short was driving next to Green's SUV in the left lane. Early in the video, Green appears to maintain a safe distance between his SUV and the truck. However, as the video progresses, Green steadily accelerates and closes the distance between his SUV and the truck. After the two cars emerge from a curve, Green appears to return to a greater distance. However, approximately 45 seconds into the video, as the cars approach a rest area exit, Green again accelerates and closes the distance between his SUV and the truck. As the truck approaches the rest area exit, it engages its turn signal and brakes. Green—who at this point has maintained his close following distance from the pickup—is forced to swiftly apply his brakes. Green does not change lanes because Trooper Short is still driving next to him in the left lane. However, Trooper Short has little trouble moving to the right lane. Though there is no video footage of the right lane behind Green, Trooper Short's ability to change lanes would suggest that there was nobody behind Green.

Trooper Short engaged his blue lights and pulled Green over for following the black pickup too closely in violation of Ark. Code Ann. § 27-51-305. Trooper Short noted in his report that Green's SUV was approximately two car lengths away from the pickup truck, and the cars were travelling at 60 miles per hour. Green exited the interstate at the next exit and stopped on the side of the road at the end of the exit ramp.

Trooper Short initially approached the passenger window. He noted that both passengers appeared nervous. Trooper Short explained that he pulled Green over because he was following the pickup "a little bit close." Trooper Short requested Green's driver's license but stated that he did not intend to issue a ticket. Trooper Short asked the defendants about their line of work, and Green replied that they were in fugitive recovery. After discovering the car was a rental, Short asked for a copy of the rental paperwork. At that point, Trooper Short asked Green to return to his

2

patrol car with him and promised that they would be on their way soon.

Green and Trooper Short returned to the patrol car approximately a minute and a half after the traffic stop began—that is, after the cars came to a complete stop on the exit ramp. Once in the car, Trooper Short asked Green about their destination, and inquired as to their travel plans and purpose—including the fugitive they were after and the length of their stay in Virginia. Green informed Trooper Short they were staying in Virginia for three days. Trooper Short then radioed dispatch to obtain the defendants' criminal history.

While waiting on a response from dispatch, Trooper Short returned to the SUV to speak with Cox. Trooper Short asked Cox the same questions he had asked Green to corroborate Green's answers. Cox did not know the name of the fugitive they were allegedly hunting. Moreover, he indicated that they were staying in Virginia for only one day. Trooper Short then asked Cox about his criminal history, to which Cox replied that he has a DUI. Trooper Short returned to the patrol car approximately six and a half minutes after the traffic stop began.

Upon his return, Trooper Short asked Green whether there were any weapons in the car, noting that both defendants appeared extremely nervous. When Green replied there were no weapons, Trooper Short then asked whether they had any drugs. Green replied that there were no drugs. Trooper Short then asked Green if he could search the vehicle—approximately seven minutes after the stop began. Green stated, "I don't care" and indicated that both he and Cox had signed the car's rental paperwork. Trooper Short then discovered that, in addition to a DUI, Cox also had a prior drug charge. Trooper Short asked Green again if he could search the car, and Green again replied that he did not care. This exchange ended approximately eight minutes after the stop began.

Trooper Short exited his patrol car and asked Green to wait in front of their vehicle.

3

Trooper Short approached the passenger window and asked Cox to exit the vehicle because Green had consented to a search. Cox offered no objection and exited the SUV. Both defendants waited at the front of the SUV while Trooper Short performed his search. Eventually, Trooper Short discovered approximately 17 kilograms of cocaine in the vehicle's trunk and placed both defendants under arrest.

Defendants filed the instant motions to suppress all evidence obtained from Trooper Short's search, arguing that the stop and subsequent search were unconstitutional. Specifically, Defendants argue that: (1) Trooper Short lacked probable cause to support the initial stop, and the initial stop was pretextual; (2) Green's consent was invalid because Green did not actually rent the car; (3) Green's consent was not voluntary; and (4) the scope of the investigation regarding the stop was excessive. As a result, Defendants contend that the evidence seized as a result of the stop and subsequent search is inadmissible under the Fruit of the Poisonous Tree doctrine. The Court will handle each argument in turn.

## II. Analysis

### A. Initial Traffic Stop

Defendants argue first that the initial traffic stop violated their constitutional rights for two reasons: (1) Trooper Short lacked probable cause to initiate the stop, and (2) the stop was pretextual. It is well settled that a traffic stop is a "seizure" that implicates Fourth Amendment protections, and therefore the stop must be reasonable. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). A traffic stop is reasonable if based on probable cause or reasonable suspicion. *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). Any traffic violation, no matter how minor, provides probable cause to stop a driver. *United States v. Martinez*, 358 F.3d 1005, 1009 (8th Cir. 2004). However, the question is not whether the defendant actually violated a traffic law,

but whether an objectively reasonable officer could have concluded the defendant committed a traffic violation. *See United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005). Indeed, even if the officer was mistaken in concluding that a traffic violation occurred, the stop does not violate the Fourth Amendment if the mistake was an objectively reasonable one. *Washington*, 455 F.3d at 826; *see also United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1109 (8th Cir. 2007) ("The constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officer . . . and the subjective intentions of the officer making the stop are irrelevant in determining the validity of the stop."); *Martin* 411 F.3d at 1001-02.

Defendants' argument that the traffic stop was pretextual is immaterial to determining whether the stop was reasonable. The question rather is whether it was objectively reasonable for Trooper Short to conclude that Defendants were violating a traffic law. *See Martin*, 411 F.3d at 1001.

Ark. Code Ann. § 27-51-305(a) provides that a driver may not follow another vehicle "more closely than is reasonable and prudent, having regard for the speed of the vehicles and the traffic upon and the condition of the highway." The statute itself confers significant discretion to the police officer. When Trooper Short approached the window, he told Green he thought he was following the pickup "a little bit close." Trooper Short documented that Defendants' car was approximately two car lengths away from the truck traveling at 60 miles per hour. (Doc. 47, p. 2). Neither defendant refutes these observations.[2] After reviewing the dash cam footage, the Court

---

[2] Instead, Defendants argue that these observations alone are insufficient to demonstrate a violation of Ark. Code Ann. § 27-51-305 because the statute also requires an officer consider the traffic and condition of the road. Defendants argue that because Trooper Short's report does not take into account the road conditions or traffic, there was no probable cause to support Defendants were violating the statute. However, Defendants offer no legal support for their claim that speed and vehicle proximity are insufficient to support a conclusion that a vehicle was following more

5

finds that Trooper Short's conclusion was objectively reasonable. A short time after the video started, Green steadily accelerates and closely approaches the black pickup. After temporarily decelerating, Green then begins to accelerate again. By the time the truck applied its brakes, Green was close enough that a reasonable officer would have believed it was closer than was reasonable and prudent given the speed of the vehicles.

Moreover, at the point in time when the video begins, Green was passing a sign notifying drivers of an approaching rest area and exit. A reasonable and prudent driver would understand that cars may be slowing down in anticipation of exiting, and a driver would be cautious when approaching those exits. The video depicts Green steadily approaching the black pickup as the exit nears. Green eventually is so close that when the pickup applies its brakes to exit, Green is forced to quickly apply his own brakes. There is nothing in the record to suggest Green was unable to slow down prior to that point—rather, Trooper Short had little difficulty changing lanes immediately after both cars applied their brakes. The Court therefore finds that an objectively reasonable officer would determine that Green was following the black pickup too closely in light of the road conditions and traffic. Thus, there was probable cause to support the initial stop.

Defendants further argue that that the holding in *Pargament v. State*, 2019 Ark. App. 311 (Ark. Ct. App.) requires a finding by this Court that probable cause did not exist to support the initial stop. *Pargament* is factually distinguishable from this case. In *Pargament*, the Arkansas Court of Appeals determined that the defendant was following too closely only because the vehicle in front of the defendant had pulled in front of him. *Id.* at *4. As a result, the court concluded, the situation was the result of the other driver's actions—not those of the defendant. In this case, the

---

closely than was reasonable and prudent, or their implied argument that a police report must include observations about road conditions and traffic, and this Court has found no such authority.

6

dash cam video shows Green accelerating and getting closer to the black pickup truck before the pickup applied its brakes. Defendants' contention that the truck's application of its brakes removes fault from Green is incorrect because Green was already following too closely when the other driver took action. *Pargament* is inapplicable.

B.     **Scope of the Traffic Stop**

Defendants next argue that the Trooper Short's investigation of the initial stop was excessive and longer than reasonably necessary. "Typically, a reasonable investigation of a traffic stop may include asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose." *United States v. Foley*, 206 F.3d 802, 805 (8th Cir. 2000). The officer may also complete computerized checks of the driver's license, vehicle registration, and criminal history. *United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007). Even further, the officer may undertake similar questioning of the vehicle's passenger to verify information provided by the driver. *Foley*, 206 F.3d at 805.

In this case, throughout the seven-minute encounter with Defendants, Trooper Short conducted an investigation typical of a traffic stop. He checked Green's license and criminal history and inquired about their travel destination and purpose. Trooper Short returned to the car to speak with Cox and asked him similar questions to verify the information provided by Green. Trooper Short obtained consent to search the vehicle approximately seven minutes after initiating the traffic stop. This amount of time is not unreasonable under the circumstances presented here. Defendants' argument that the investigation should have ceased once Trooper Short indicated he did not intend to write a citation is incorrect. There is nothing to suggest Trooper Short did not intend to write a warning. Defendants argue that Trooper Short's questions did not relate to his investigation of the initial stop. However, Trooper Short's questioning was primarily concerned

with defendants' destination and purpose. This line of questioning has been repeatedly upheld as within the scope of an officer's investigation of a traffic stop. Though Green's answers directed the conversation away from Short's questions at times, Short's initial questions were nonetheless on point.

After Defendants' demeanor and answers to Short's lawful questions established a reasonable suspicion of unrelated criminal activity, Trooper Short was not unreasonable to ask additional questions concerning drugs and weapons. "An officer conducting a traffic stop who discovers information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation." *United States v. Woods*, 829 F.3d 675, 680 (8th Cir. 2016) (citing *United States v. Anguiano*, 795 F.3d 873, 876 (8th Cir. 2015)); *see also United States v. Perez*, 200 F.3d 576, 579-80 (8th Cir. 2000). Defendants represented they were in the fugitive recovery business. Given the nature of fugitive recovery, it was certainly reasonable for Trooper Short to inquire about weapons for his own safety. Moreover, when asked about their trip, Cox could not remember the name of the individual they were chasing. Additionally, Green indicated they were staying in Virginia for three days, but Cox said they were returning in one day. These variations and inconsistencies in their stories permitted Trooper Short to broaden his investigation and questioning. *See Perez*, 200 F.3d at 579. Thus, Trooper Short's investigation was not unconstitutionally excessive.

### C. Consent

Finally, Defendants argue that Green's consent to search the vehicle was not voluntary and that Green lacked the authority to consent to any search of the rental vehicle. The Court will handle both arguments in turn.

### 1. Voluntary Consent

Whether a defendant's consent is voluntary is analyzed under the totality of the circumstances. *United States v. Esquivias*, 416 F.3d 696, 700 (8th Cir. 2005). The Government bears the burden of demonstrating by a preponderance of the evidence that consent was voluntary and that the defendant behaved in such a way "that the officer reasonably believed that the search was consensual." *Id.* (citing *United States v. Cedano-Medina*, 366 F.3d 682, 684-85 (8th Cir. 2004)). The Eighth Circuit has outlined both personal and environmental factors a court should consider when deciding whether consent is voluntary:

> In evaluating the reasonableness of the officer's belief, we consider the characteristics of the person consenting, including the party's age, intelligence and education, whether he was under the influence of drugs or alcohol, whether he was informed of his right to withhold consent, and whether he was aware of rights afforded criminal suspects. . . . We also consider the environment in which the alleged consent took place, specifically (1) the length of time he was detained; (2) whether the police threatened, physically intimidated, or punished him; (3) whether the police made promises or misrepresentations; (4) whether he was in custody or under arrest when the consent was given; (5) whether the consent occurred in a public or a secluded place; and (6) whether he stood by silently . . . as the search occurred.

*Id.* at 700 (internal quotations and citations omitted).

At the time of the stop, Green was 39 years old. Based on his conversing with Trooper Short, he appeared to be of reasonable intelligence. Green represented that he had been working in the bail bond business. He had been arrested several times and had at least two prior felony convictions. These facts all support Green's awareness of his rights. *See United States v. Barnum*, 564 F.3d 964, 971 (8th Cir. 2009) (inferring defendant's knowledge of his rights based on his previous arrests). There is nothing in the record to suggest that Green was under the influence of any substance or alcohol. Trooper Short's investigation prior to Green's consent lasted approximately seven minutes. Trooper Short told Green that he would not be issuing a citation

when the stop began. Trooper Short was cordial throughout the entire encounter, directed no threats or intimidations at Green. Though Trooper Short did not inform Green of his right to refuse consent, he was under no obligation to do so. *See Esquivias*, 416 F.3d at 701 ("[A] defendant need not be aware, nor must an officer inform him, of his right to refuse consent for his consent to be voluntary."). Based on the totality of the circumstances, it was reasonable for Trooper Short to believe that Green voluntary consented to a search of the SUV.

### 2. Authority to Consent

Defendants further argue that Green had no authority to consent to a search of the vehicle because he did not rent the car. It is well settled in the Eighth Circuit that Green—as the driver—had authority to consent to a search of the car. *See United States v. Eldridge*, 984 F.2d 943, 948 (8th Cir. 1993) ("The driver of a car has the authority to consent to a search of that vehicle. As the driver, he is the person having immediate possession and control over the vehicle."). "This is true even when some other person who also has control over the car is present, if the other person remains silent when the driver consents and does not object to the search." *Id.* Moreover, it appears undisputed that Green was listed as an authorized driver on the rental agreement. An authorized driver of a rental vehicle has a protected privacy interest in that vehicle even if the vehicle was leased in another person's name. *See United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998) (finding driver has protected privacy interest if the individual who leased the vehicle gave consented to his use of the car). Thus, Green had actual authority to consent to a search of the SUV.

Furthermore, even assuming Green did not have actual authority, Trooper Short asked Cox to step out of the vehicle and indicated that Green had consented to a search. Cox offered no objection. Even if Green had lacked the authority to consent to a search, Cox consented to the

search by exiting the car and offering no objection. The motions to suppress will therefore be denied.

**III.    Conclusion**

IT IS THEREFORE ORDERED that Defendants' motions (Docs. 36 and 38) are DENIED. The matter remains pending for trial.

IT IS SO ORDERED this 4th day of September, 2019.

*/s/ P. K. Holmes, III*
P.K. HOLMES, III
U.S. DISTRICT JUDGE